UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STANLEY WOODS,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>HAAR, ET AL.,<br><br>　　　　　Defendant(s). | Case No. CV 19-695-ODW (KK)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Otis D. Wright, II, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Plaintiff Robert Stanley Woods ("Plaintiff"), an inmate at Richard J. Donovan Correctional Facility ("RJD"), filed a pro se civil rights Complaint ("Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983"). ECF Docket No. ("Dkt.") 1. The remaining claims in the Complaint allege Drs. Breen and Taylor were deliberately indifferent to Plaintiff's serious medical condition in violation of Plaintiff's Eighth Amendment rights and Dr. Haar retaliated against Plaintiff for filing a grievance in violation of Plaintiff's First Amendment rights. Id. Drs. Breen, Taylor, and Haar

("Defendants") have filed a Motion for Summary Judgment ("Motion"). Dkt. 90. For the reasons set forth below, the Court recommends GRANTING Defendants' Motion.

## II.

## PROCEDURAL HISTORY

**A. COMPLAINT**

On January 24, 2019, Plaintiff, proceeding pro se and in forma pauperis, constructively filed[1] a civil rights Complaint arising out of his medical treatment while he was confined at California Men's Colony ("CMC"). Dkt. 1. The three remaining claims[2] in the Complaint allege (1) deliberate indifference in violation of the Eighth Amendment against Dr. Breen; (2) deliberate indifference in violation of the Eighth Amendment against Dr. Taylor; and (3) retaliation in violation of the First Amendment against Dr. Haar. Id.

The Complaint sets forth the following allegations:

Plaintiff is a state prisoner who suffers from keloids, which have caused him chronic complications for decades. Id. at 9. In 2016, California Department of Corrections and Rehabilitation ("CDCR") settled a prior lawsuit with Plaintiff and agreed to certain treatment protocols going forward, including a requirement to "send Plaintiff to a Dermatologist <u>near</u> the <u>prison</u> <u>where</u> Plaintiff is 'incarcerated.'" Id. at 9, 13 (emphasis in original).

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted); see also Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

[2] On September 5, 2019, Defendants moved to dismiss all claims in the Complaint except Plaintiff's Eighth Amendment claims against Drs. Breen and Taylor. Dkt. 36. On June 4, 2020, the Court granted the motion to dismiss in part and dismissed all claims except for the Eighth Amendment deliberate indifference claims against Drs. Breen and Taylor and the First Amendment retaliation claim against Dr. Haar. Dkts. 45, 51.

2

On August 31, 2018, Plaintiff was transferred from California State Prison – Los Angeles County ("CSP-LAC") to CMC. Id. at 9. Upon arrival at CMC, Plaintiff was seen by Dr. Breen, who, although being informed by Plaintiff about the settlement agreement with CDCR, "refused to look" at the agreement that detailed "guideline[s] to be followed," refused to provide Plaintiff with "complete 'dressing change supplies,'" and told Plaintiff he would be seen by a doctor with dermatology training rather than a "real dermatologist." Id. at 11-12. As a result, during Plaintiff's four months at CMC, he was never seen by a dermatologist. Id. at 11.

On September 13, 2018, Plaintiff filed a grievance against Dr. Breen. Id.

On September 21, 2018, Plaintiff was seen by Dr. Taylor. Id. at 12. Dr. Taylor refused to provide Plaintiff with "complete 'dressing change supplies,'" including Plaintiff's "current prescription" for hydrogen peroxide. Id.

On December 22, 2018, Plaintiff was transferred from CMC to Richard J. Donovan Correctional Facility ("RJD") at Dr. Haar's "insistence" in retaliation for filing grievances and "used [the settlement agreement] as an excuse" for the transfer. Id. at 13. As a result of the transfer, Plaintiff was placed "back in an environment he had escaped and jeopardized his life and health[] [and] [d]estroyed Plaintiff's rehabilitative rapport." Id. at 14.

Plaintiff seeks punitive damages and an order that Defendants be fired and his property that was lost in the transfer be replaced. Id. at 15.

On February 4, 2021, Defendants filed an Amended Answer.[3] Dkt. 68.

**B.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On July 15, 2021, Defendants filed the instant Motion seeking summary judgment on the grounds (a) there is no evidence Drs. Breen or Taylor were deliberately indifferent to Plaintiff's medical needs; (b) "it is undisputed that Dr.

---

[3] Defendants filed a timely Answer on August 11, 2020. Dkt. 56. The Court subsequently granted Defendants leave to file an Amended Answer, clarifying the status of CMC with respect to Plaintiff's allegation that CMC is a "medical facility." Dkt. 67.

3

Haar's recommendation that Plaintiff be transferred was not because of Plaintiff's protected conduct, advanced legitimate correctional goals, and would not have chilled an inmate's exercise of First Amendment conduct"; and (c) Defendants are entitled to qualified immunity. Dkt. 90. In support of Defendants' Motion, Defendants submit the following:

- Defendants' Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), dkt. 90-1;
- Declaration of E. Breen ("Breen Decl."), dkt. 90-2, attaching:
    - Exhibit A – September 7, 2018 progress note prepared by Dr. Breen
- Declaration of D. Taylor ("Taylor Decl."), dkt. 90-3, attaching:
    - Exhibit A – May 17, 2016 note signed by Dr. Langley
    - Exhibit B – June 29, 2018 Office Visit Note signed by Dr. Blake
    - Exhibit C – September 21, 2018 progress note prepared by Dr. Taylor
- Declaration of J. Haar ("Haar Decl."), dkt. 90-4, attaching:
    - Exhibit A – February 2016 Settlement Agreement between Plaintiff and CDCR
    - Exhibit B – records regarding Plaintiff's hydrogen peroxide prescriptions
    - Exhibit C – May 25, 2018 progress note signed by Physician Assistant Tiggs-Brown
    - Exhibit D – May 3, 2018 progress note signed by Nurse Webb and May 17, 2018 progress note signed by Nurse Mason
    - Exhibit E – June 25, 2018 Office Visit Note signed by Dr. Blake
    - Exhibit F – Healthcare Grievance dated August 13, 2018 and August 16, 2018 Outpatient Progress Note signed by Physician Assistant Tiggs-Brown

4

- - Exhibit G – August 31, 2018 hydrogen peroxide prescription
  - Exhibit H – September 21, 2018 referral for offsite dermatology consultation prepared by Dr. Taylor
  - Exhibit I – September 21, 2018 progress note prepared by Dr. Taylor
  - Exhibit J – December 11, 2018 Classification Committee Chrono
- Declaration of Jeremy C. Doernberger, defense counsel, ("Doernberger Decl."), dkt. 90-5, attaching:
  - Exhibit A – portions of Plaintiff's April 28, 2021 deposition ("Woods Dep.")

On July 16, 2021, the Court issued an Order notifying Plaintiff of the requirements for opposing a motion for summary judgment pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998). Dkt. 91.

On September 2, 2021, Plaintiff constructively filed an Opposition. Dkt. 96. In support of his Opposition, Plaintiff attaches forty-eight documents[4] (dkt. 96 at 27-69; dkt. 96-1 at 1-66) and his declaration, dkt. 96 at 1-3 ("Woods Decl.").

On October 22, 2021, Defendants filed a Reply. Dkt. 100. The Motion thus stands submitted and ready for decision.

## III.
## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett,

---

[4] The Court has reviewed the documents submitted by Plaintiff and has considered them to the extent the contents are relevant and admissible. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (noting that at the summary judgment stage, courts should not focus on the admissibility of the form of evidence that the parties submit, but on the admissibility of the contents of the evidence); see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.").

1  477 U.S. 317, 322 (1986). A genuine issue of material fact will exist "if the evidence is
2  such that a reasonable jury could return a verdict for the non-moving party."
3  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
4       If the party moving for summary judgment bears the burden of proof at trial,
5  that party "must come forward with evidence which would entitle [him] to a directed
6  verdict if the evidence went uncontroverted at trial." C.A.R. Transp. Brokerage Co. v.
7  Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted). A moving
8  party who bears the burden of persuasion at trial must show that "the evidence is so
9  powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro,
10 514 F.3d 878, 890 (9th Cir. 2008) (citation omitted).
11      When ruling on a summary judgment motion, the district court must view all
12 inferences drawn from the underlying facts in the light most favorable to the
13 nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
14 587 (1986). Summary judgment is therefore not appropriate "where contradictory
15 inferences may reasonably be drawn from undisputed evidentiary facts."
16 Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).
17 Furthermore, the Court must not make credibility determinations with respect to the
18 evidence offered. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d
19 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).
20      An affidavit or declaration may be used to support or oppose a motion for
21 summary judgment, provided it is "made on personal knowledge, set[s] out facts that
22 would be admissible in evidence, and show[s] that the affiant or declarant is
23 competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). In addition,
24 pursuant to Local Civil Rule 56-3, the Court assumes the material facts as claimed and
25 adequately supported by the moving party are admitted to exist without controversy
26 except to the extent that such material facts are (a) included in the "Statement of
27 Genuine Disputes" and (b) controverted by declaration or other written evidence filed
28 in opposition to the motion. L.R. 56-3.

## IV.

## DISCUSSION

**A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS AGAINST DRS. BREEN AND TAYLOR**

Plaintiff argues Drs. Breen and Taylor were deliberately indifferent to Plaintiff's serious medical condition – chronic keloids – when they denied his request for hydrogen peroxide and when Dr. Breen failed to refer him to a dermatologist.[5]

**1. Applicable Law – Deliberate Indifference**

Prison officials or private physicians under contract to treat state inmates "violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (alterations in original); see also Farmer, 511 U.S. at 828; West v. Atkins, 487 U.S. 42, 54 (1988). To assert a deliberate indifference claim, a prisoner-plaintiff must show the defendant (1) deprived plaintiff of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991).

"A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" Peralta, 744 F.3d at 1081. "A prison official is deliberately indifferent to [a serious medical] need if he 'knows of and disregards an excessive risk to inmate health.'" Id. at 1082. This standard "requires more than ordinary lack of due care." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). The "official must both be aware of facts from which the inference could

---

[5] To the extent Plaintiff's deliberate indifference claims against Drs. Breen and Taylor are based on purported violations of the settlement agreement, Defendants are entitled to judgment as a matter of law because "violation of a settlement agreement entered into in a civil rights action is not itself a separate civil rights action." Giraldes v. Nicolai, No. 2:16-cv-0497-AC (P), 2017 WL 85791, at *2 (E.D. Cal. Jan. 9, 2017); Mitchell v. CDCR, No. 21-CV-01781-BAS-BLM, 2021 WL 5206135, at *3 (S.D. Cal. Nov. 9, 2021) (same).

7

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citation omitted).

"Deliberate indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), cert. denied, 519 U.S. 1029 (1996); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (finding negligence constituting medical malpractice is not sufficient to establish an Eighth Amendment violation); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a" Section 1983 claim. Franklin v. Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). A plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson, 90 F.3d at 331 (citation omitted).

### 2. Undisputed Material Facts

The undisputed material facts establish the following:

Plaintiff has had keloid scars since 1977. Woods Dep. at 22:14-17. Keloid scars, also called keloids, are a skin condition characterized by raised red-colored scars that develop at the site of an injury, which can be painful and can become infected. Woods Dep. at 21:3-11; SUF 5. Infected keloid scars must be kept clean, which can be accomplished with a topical hydrogen peroxide solution. Woods Dep. at 42:16-20; Taylor Decl., ¶¶ 13, 20; Breen Decl., ¶ 14. Hydrogen peroxide is used to clean the wound site after surgery or when the keloid gets infected. Woods Dep. at 42:19-20.

On August 31, 2018, Plaintiff was transferred to CMC from CSP-LAC. SUF 20. Drs. Breen and Taylor are physicians employed by CDCR at CMC and were so employed in September 2018. Breen Decl., ¶ 2; Taylor Decl., ¶ 2.

On September 7, 2018, Plaintiff had an appointment with Dr. Breen, which was his first appointment with a doctor since his transfer to CMC. Woods Dep. at 74:13-16; Breen Decl., ¶¶ 2, 5. Plaintiff reported to Dr. Breen that his pain was worse with palpitation of the keloids, but denied any recent infections. Breen Decl., ¶ 11; Breen Decl., Ex. A. Dr. Breen did not observe any signs of infection or inflammation during Plaintiff's appointment.[6] Id., ¶ 12. Dr. Breen declined to prescribe any additional hydrogen peroxide to Plaintiff, but ordered a follow-up appointment for Plaintiff with a doctor with "dermatological training." Id., ¶¶ 17, 20.

On September 21, 2018, Plaintiff had an appointment with Dr. Taylor regarding his request for hydrogen peroxide. Taylor Decl., ¶¶ 2, 5; Taylor Decl., Ex. A. Plaintiff told Dr. Taylor that in the past his keloid scars had been much more inflamed and swollen than they were at that time. Taylor Decl., ¶ 12; Taylor Decl., Ex. C. Upon examination, Dr. Taylor determined Plaintiff's keloid scars did not show any signs of infection or inflammation.[7] Id. Dr. Taylor denied Plaintiff's request for hydrogen peroxide, but told Plaintiff that "as soon as he notices anything that might be the start of infection that he should notify nursing through [CDCR Form] 7362

---

[6] In his Opposition, Plaintiff alleges Dr. Breen only stood "several feet away and look[ed] at Plaintiff," Opp. at 4, but fails to present any evidence to dispute the scope of Dr. Breen's exam. Nonetheless, for purposes of this Motion, the Court will assume the examination consisted of standing several feet away from Plaintiff. Notably, Dr. Breen states in his declaration that his "physical examination of Plaintiff would have been sufficient for [him] to have seen any evidence of infection of Plaintiff's keloids, had any infection been present." Breen Decl., ¶ 12.

[7] In his Opposition, Plaintiff alleges Dr. Taylor only stood "several feet away and look[ed] at Plaintiff," Opp. at 4, but fails to present any evidence to dispute the scope of Dr. Taylor's exam. Nonetheless, for purposes of this Motion, the Court will assume the examination consisted of standing several feet away from Plaintiff. Notably, Dr. Taylor states in his declaration that his "physical examination of Plaintiff would have been sufficient for [him] to have seen any evidence of infection of Plaintiff's keloids, had any infection been present." Taylor Decl., ¶ 12.

9

and he will be seen the following day." Taylor Decl. ¶¶ 14-15, 19; Taylor Decl., Ex. C.

On September 30, 2018, Plaintiff's keloids became infected for the first time since his transfer to CMC. Woods Dep. at 74:3-8; see also Opp. at 13-14.

**3. Analysis**

Here, Plaintiff does not dispute that he did not have an active infection at the time he met with Drs. Breen or Taylor. See Woods Decl., ¶ 6. Plaintiff appears to argue Drs. Breen and Taylor were deliberately indifferent to his serious medical need because they knew that due to his chronic condition the keloids would get infected in the future and he would need hydrogen peroxide on that future date. Opp. at 11-15. However, at the time the doctors examined him, Plaintiff concedes he reported he did not have an infection. Woods Dep. at 74:3-8; see also Opp. at 13-14. Hence, Plaintiff has not shown he had a serious medical need for hydrogen peroxide to treat uninfected keloids. See Peralta, 744 F.3d at 1081.

Moreover, Plaintiff's argument that he should have been prescribed hydrogen peroxide pre-emptively is simply a disagreement with the doctors regarding the appropriate medical treatment for uninfected keloids. Plaintiff's disagreement with the doctors' determination that hydrogen peroxide was not medically necessary is, at most, a difference of opinion regarding Plaintiff's medical treatment, which falls short of deliberate indifference. Toguchi, 391 F.3d at 1058.

Finally, Dr. Taylor specifically advised Plaintiff to notify nursing "as soon as he notices anything that might be the start of infection" and he would be seen the next day. Taylor Decl. ¶¶ 14-15, 19; Taylor Decl., Ex. C. Plaintiff has not shown he suffered any injury as a result of being required to notify nursing before being given hydrogen peroxide, because he has offered no evidence that he ever notified nursing of an active infection and was thereafter denied appropriate medical care. See Alexander v. Peters, No. 2:15-CV-02179-CL, 2019 WL 2529568, at *5 (D. Or. Apr. 12, 2019), report and recommendation adopted, 2019 WL 2526177 (D. Or. June 19,

1  2019), aff'd, 851 F. App'x 101 (9th Cir. 2021) ("[A] one-day delay in treatment does
2  not constitute deliberate indifference absent a showing of significant harm."). In
3  addition, Dr. Breen was not deliberately indifferent to Plaintiff's serious medical
4  condition when Dr. Breen referred Plaintiff to a doctor with dermatological training
5  rather than a board-certified dermatologist. Less than two weeks later, Dr. Taylor
6  referred Plaintiff to a dermatologist and Plaintiff has not established he suffered any
7  injury from the two-week delay in receiving the referral because he concedes he did
8  not have an active infection until after his appointment with Dr. Taylor. Therefore,
9  Plaintiff has failed to establish he suffered any injury as a result of the actions taken by
10 Drs. Breen or Taylor.

Hence, viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could return a verdict in Plaintiff's favor and Drs. Breen and Taylor are entitled to summary judgment on Plaintiff's deliberate indifference claims.

**B.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM AGAINST DR. HAAR**

Plaintiff argues Dr. Haar retaliated against him for filing a grievance against Dr. Breen by "ordering" Plaintiff to be transferred out of CMC. Woods Decl., ¶ 1; Opp. at 8-9, 15-16.

**1.  Applicable Law**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted); see also Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) [a]n assertion that [a prison official] took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

11

1   Accordingly, because a prisoner's First Amendment rights are necessarily
2   curtailed, a prisoner-plaintiff "must do more than allege retaliation because of the
3   exercise of his first amendment rights . . . ; he must also allege that the prison
4   authorities' retaliatory action did not advance legitimate goals of the correctional
5   institution or was not tailored narrowly enough to achieve such goals." Rizzo v.
6   Dawson, 778 F.2d 527, 532 (9th Cir. 1985). The plaintiff, therefore, "bears the
7   burden of pleading and proving the absence of legitimate correctional goals for the
8   conduct of which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

**2. Undisputed Material Facts**

The undisputed material facts establish the following:

Dr. Haar is employed as a physician and the Chief Medical Executive at CMC and was so employed while Plaintiff was housed at CMC from September 2018 to December 2018. Haar Decl., ¶ 2.

Sometime between September 18, 2018 and September 24, 2018, Dr. Haar received a phone call requesting his "assistance regarding Plaintiff's need for chronic care regarding his keloid condition, and regarding Plaintiff's complaint regarding a medical appointment with Dr. Breen regarding his chronic care." Id., ¶ 6.

Dr. Haar reviewed Plaintiff's medical history and February 2016 settlement agreement with CDCR. Id., ¶¶ 7-8. The settlement agreement required, in relevant part, that "CDCR will provide medical care for Plaintiff's keloid condition by referring him to a board-certified dermatologist—who is listed on CDCR's and/or the Office of the Receiver's list of approved providers—located near the institution where Plaintiff is incarcerated." Id., ¶ 8, Ex. A.

In light of Dr. Taylor's referral of Plaintiff to an outside board-certified dermatologist, Plaintiff's medical history, and the settlement agreement, Dr. Haar asked an Office Technician, who was responsible for scheduling patient health care appointments, whether there were any board-certified dermatologists near CMC that were accepting new patients. Id., ¶¶ 18, 19. The Office Technician informed Dr.

1  Haar that there were no board-certified dermatologists near CMC accepting new
2  patients and the nearest dermatologist who could provide treatment for Plaintiff was
3  in Bakersfield, California, approximately 124 miles away.  Id., ¶¶ 19, 22.  While there
4  were three dermatologists within approximately twenty miles of CMC that were seeing
5  inmate-patients housed at CMC, Dr. Haar did not believe they were accepting new
6  inmate-patients in September 2018 because the Office Technician had informed Dr.
7  Haar that the nearest available dermatologist was in Bakersfield, California.  Id., ¶ 20.
8  Dr. Haar therefore believed that "transferring Plaintiff to a CDCR facility that was
9  located closer to a board-certified dermatologist on CDCR's and/or the Office of the
10 Receiver's list of approved providers would result in a drastically shorter travel time
11 for Plaintiff to receive treatment for his keloids, and was therefore in his best medical
12 interest."  Id., ¶ 30.  Accordingly, Dr. Haar recommended to the Uniform
13 Classification Committee ("UCC") that Plaintiff be transferred to a CDCR facility
14 closer to a board-certified dermatologist.  Id., ¶ 26.
15       At a UCC hearing on December 11, 2018, the UCC elected to transfer Plaintiff
16 to RJD and noted it was a "non adverse involuntary transfer that is in the best interest
17 of the inmate."  Id., Ex. J.
18       On December 22 or 23, 2018, Plaintiff was transported to RJD.  Woods Dep.
19 at 140:10-15; Opp. at 5; Compl. at 10; SUF 59.
20       **3.    Analysis**
21       Here, Defendants have established Dr. Haar's recommendation to transfer
22 Plaintiff to a prison with a board-certified dermatologist nearby reasonably advanced
23 the legitimate correctional goal of caring for Plaintiff's chronic medical condition.
24 Miller v. California Dep't of Corr. & Rehab., No. 16-CV-02431-EMC, 2018 WL
25 534306, at *17 (N.D. Cal. Jan. 24, 2018) ("The provision of adequate medical care to
26 inmates to maintain their health is a legitimate correctional goal.").  Plaintiff fails to set
27 forth any evidence demonstrating that his transfer did not reasonably advance a
28 legitimate correctional goal.  Hence, Defendants have demonstrated the absence of a

13

genuine dispute of material fact regarding an element of Plaintiff's claim and are, therefore, entitled to judgment as a matter of law.

Plaintiff argues transferring him did not advance a legitimate correctional goal because he could have been treated from CMC. First, Plaintiff argues Dr. Haar's interpretation of the settlement agreement requiring that Plaintiff be transferred to an institution with a dermatologist nearby was incorrect because the agreement should have been interpreted to require Plaintiff to be treated by a dermatologist near whichever institution was housing him at the time. Opp. at 6-7. Regardless of how the settlement agreement should have been interpreted, recommending a transfer to an institution with a dermatologist closer than 124 miles away advanced the legitimate correctional goal of caring for Plaintiff's chronic health condition. Second, Plaintiff argues Dr. Haar's statement that there were no available dermatologists at CMC was a "lie" because Plaintiff is aware of other inmates at CMC who saw outside dermatologists. Opp. at 5; Woods Decl., ¶ 5. In fact, Dr. Haar acknowledges there are three dermatologists near CMC. Haar Decl., ¶ 20. However, Dr. Haar was informed that the three dermatologists were not accepting new patients, and Plaintiff has not offered any evidence to show (a) those dermatologists were accepting new patients, (b) Dr. Haar knew those dermatologists were accepting new prisoner-patients, or (c) otherwise controvert Dr. Haar's declaration stating he was told there were no available dermatologists. Therefore, Plaintiff has failed to establish Dr. Haar's recommendation to transfer Plaintiff to a prison with a dermatologist nearby would not advance the legitimate correctional goal of treating his chronic keloid condition.

Plaintiff's remaining arguments generally support his claim that Dr. Haar's motive for recommending Plaintiff's transfer was to retaliate against Plaintiff for filing a grievance rather than to advance a legitimate correctional goal.[8] As set forth above,

---

[8] First, Plaintiff argues Dr. Haar admits he knew about Plaintiff's grievance against Dr. Breen. Opp. at 15-16. This fact alone could establish a triable issue of fact regarding Dr. Haar's motive, but the existence of the grievance is not relevant to

14

the element of motive is distinct from whether Dr. Haar's action advanced legitimate goals of the correctional institution or was tailored narrowly enough to achieve such goals. While the Court would find Plaintiff has established a genuine issue of material fact regarding whether Dr. Haar recommended Plaintiff's transfer "because of" Plaintiff's protected First Amendment activity, Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim against Dr. Haar because Plaintiff has not set forth any evidence establishing a genuine dispute regarding the fact that recommending Plaintiff's transfer to a prison with a board-certified dermatologist nearby advanced the legitimate correctional goal of caring for Plaintiff's chronic health condition.

## V.

## **RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the Court issue an Order: (1) accepting this Report and Recommendation; (2) GRANTING Defendants' Motion; and (3) DISMISSING the action with prejudice and without leave to amend.

Dated: December 14, 2021

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

---

whether recommending the transfer advanced a legitimate correctional goal. Second, Plaintiff appears to argue that if Dr. Haar "was so concerned" about Plaintiff's health, he would never have recommended his transfer because CMC presented a better environment for Plaintiff's overall health. Opp. at 20. While this fact may be relevant to showing Dr. Haar's motive, it is not relevant to whether Plaintiff's transfer advanced the legitimate correctional goal of caring for Plaintiff's keloids because it is undisputed there were no board-certified dermatologists near CMC seeing new patients in September 2018. In addition, Plaintiff has not established RJD would not be able to provide adequate medical care for Plaintiff's other medical conditions. Finally, to the extent Plaintiff argues Dr. Haar deliberately disregarded Plaintiff's willingness to travel 124 miles every six to eight weeks for a dermatologist appointment in Bakersfield, California, Opp. at 5, this once again goes to Dr. Haar's motive. Moreover, Plaintiff has not established Dr. Haar was aware of his willingness to travel and Dr. Haar states he believed transferring Plaintiff to a CDCR facility closer to a board-certified dermatologist "would result in a drastically shorter travel time for Plaintiff to receive treatment for his keloids and was therefore in his best medical interest." See Haar Decl., ¶ 30.

15